**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------X
AHMET AJETI and FATMIRE AJETI,

                        Plaintiffs,

       -against-

WILLIAM GOTTLIEB MANAGEMENT CO LLC, MARIKA BENDER *individually* and NEIL BENDER *individually*,

                        Defendants.
------------------------------------------------X

**COMPLAINT**

Case No.: _____

**PLAINTIFFS DEMAND A TRIAL BY JURY**

Plaintiffs, AHMET and FATMIRE AJETI, by their attorney, The Rose Law Group, PLLC, upon information and belief, complains as follows:

## NATURE OF THE CASE

1. Plaintiffs complain pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") for failure to pay the minimum wage and an overtime premium for hours Plaintiffs were required to report to work, ready to perform work and actually perform work duties. Plaintiffs seek to recover unpaid back wages, the overtime premium, spread of hours pay, and an additional amount as liquidated damages, reasonable attorneys' fees and costs.

2. Defendants also violated the NYLL by failing to provide the appropriate wage statements and wage notices.

## JURISDICTION AND VENUE

3. Jurisdiction of this action is conferred upon the Court by § 16(b) of the FLSA (29 U.S.C. §216(b)). Jurisdiction of this Court is also proper under 42 U.S.C. §12101 et. seq.; 29 U.S.C. §2617.

4. Supplemental Jurisdiction is proper over the State law claims pursuant to 28 U.S. Code §

1367.

5. Venue is proper in this district based upon Defendants' residency within New York County, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

## PARTIES

6. That at all times relevant hereto, Plaintiff Ahmet Ajeti ("Ahmet") is a resident of the State of New York and New York County and worked at the "Building" located at 400 East 53rd Street, New York, New York.

7. That at all times relevant hereto, Plaintiff Fatmire Ajeti ("Fatmire") is a resident of the State of New York and Queens County and also worked at the Building.

8. That at all times relevant hereto, Defendant William Gottlieb Management Co LLC ("WGM") was and is a Domestic Business Corporation duly authorized and existing by virtue of the laws of the State of New York.

9. That at all times relevant hereto, Defendant WGM does business in the State of New York.

10. That at all times relevant hereto, Defendant WGM's principal place of business is 177 Christopher Street, New York, New York 10014 and they manage and/or own the Building and employed Plaintiffs along with the other Defendants.

11. Defendants Neil Bender ("Neil") and Marika Bender ("Marika") (together the "Benders"), upon information and belief, are the owners of Defendant WGM and employers of Plaintiffs.

12. Plaintiffs were at all relevant times employed by Defendants.

13. At all times Defendants WGM employed together more than eleven (11) employees and did more than $500,000.00 in business per year.

14. As a requirement of their jobs, Plaintiffs handled goods such as cleaning supplies and tools which had moved in interstate commerce.

## **MATERIAL FACTS**

15. Plaintiff Ahmet and Plaintiff Fatmire are married.

16. Plaintiff Ahmet was hired by Defendants in or around 1994 to work for the building located at 400 East 53rd Street, New York, New York (the "Building") as a Superintendent.

17. Defendant WGM purchased the building in or around 1999 and continued to employ Plaintiff Ahmet as a superintendent.

18. The Building has approximately twenty-four (24) residential units and an additional four (4) commercial units.

19. Plaintiff Ahmet was hired to work servicing all of the residential units in the Building and the commercial units when they are vacant.

20. Plaintiff Fatmire was almost immediately asked to also work for Defendants, without compensation, to supplement the work performed by Plaintiff Ahmet.

21. Plaintiff Ahmet's job duties from six (6) years prior to the filing of this Complaint until his termination in November of 2022 were to keep the entire common areas clean, the outdoor clean, the garbage clean, clean the garden area clean, sweeping, shoveling, spraying down, and otherwise maintaining all common areas in a clean manner throughout the week.

22. Plaintiff Ahmet was regularly told that he, or his wife, had to be available at all hours, twenty-four hours a day, seven days per week.

23. In fact, one night at 10:00 PM, someone knocked on Plaintiff Ahmet's door and when he did not answer, they issued him a disciplinary letter.

24. As a result, Plaintiff Ahmet and Plaintiff Fatmire were required to be engaged to be waiting to perform their duties at all hours. In fact, because of this, Plaintiff Ahmet and his wife, Plaintiff Fatmire, have not taken a vacation together since 1994 when they started working for the Building because they were fearful they would be terminated if they were not available.

25. On a regular basis, Plaintiff Ahmet and Plaintiff Fatmire would spend approximately eight (8) to ten (10) hours each week sweeping and cleaning the common areas inside the building.

26. Each week, Plaintiff Ahmet and Plaintiff Fatmire clean the sidewalks, spending approximately five (5) hours removing litter, leaves, and other things from the sidewalks.

27. Three times each week, Plaintiff Ahmet and Plaintiff Fatmire take the garbage out from the garbage area and clean the garbage area. This takes approximately four (4) to five (5) hours each week.

28. Every day, Plaintiff Ahmet and Plaintiff Fatmire are asked to open the door in order to let packages be delivered to tenants between two (2) and twelve (12) times each day. This takes approximately five (5) minutes each time and takes between ten (10) minutes and an hour each day, totaling as much as seven (7) additional hours each week.

29. Service providers like Conedison, the cable companies, and others ask to be permitted into the building and/or basement. Plaintiff Ahmet and Plaintiff Fatmire must then wait for them to be finished in order to close the area and lock it. This takes approximately two (2) hours each week on average.

30. Often times, there are issues in the building which require significantly more time. By way of example, when the electricity went out in the building, Plaintiff Ahmet was required to assist in providing access throughout the time that they were providing the service.

31. Up until 2020, Plaintiff Ahmet and Plaintiff Fatmire would plant and maintain the garden area each year. They spent approximately ten (10) to fifteen (15) hours each week maintaining the garden and planting different flowers and vegetables. Defendants never provided any additional payment or reimbursement for the work in the garden.

32. When there is construction, Plaintiff Ahmet and Plaintiff Fatmire were required to clean every day. This took an additional fifteen (15) to twenty (20) hours extra while construction went

on to clean the common areas while they finished construction.

33. When Plaintiff Ahmet complained to the management company, they responded that it was his job to clean.

34. Whenever Defendants needed access to the building, Plaintiff Ahmet and Plaintiff Fatmire were required to be available on a moment's notice to provide access for whomever Defendants wanted.

35. Plaintiff Ahmet and Plaintiff Fatmire were never provided holidays, days off, sick days, vacation days, bonuses, or any other form of gratitude.

36. Whenever Plaintiff Ahmet was not available, Defendants demanded that Plaintiff Fatmire was required to provide access immediately. Defendants and their managers were aware that Plaintiff Fatmire was required to provide these services on their behalf.

37. Further, when Plaintiff Ahmet went on vacation, Defendants demanded that Plaintiff Fatmire perform all of the work to be done. In fact, because they could not communicate with Plaintiff Fatmire due to a language barrier, they demanded that Plaintiffs provide their daughter's contact information so she could act as a translator.

38. On November 10, 2022, after twenty-eight (28) years working in the Building, Defendants sent a notice of termination to Plaintiff Ahmet, providing him ten (10) days to vacate his apartment. In fact, this notice demanded that Plaintiffs vacate the apartment they lived in for twenty-eight (28) years the Monday after Thanksgiving, not even providing a reason or enough time for them to find another place to live.

39. Defendants paid Plaintiff Ahmet only approximately $150 per week prior to April of 2019. After 2019, Defendants paid only $290 per week to Plaintiff Ahmet. Plaintiff Fatmire was never paid anything.

40. While at times Plaintiff Ahmet worked approximately fifty-nine (59) hours per week, he was

never paid anything additional for hours over forty (40).

41. While Defendants demanded that Plaintiff Ahmet and Plaintiff Fatmire be available 24/7, time which is compensable under the law, Defendants never took any action to determine how many hours they actually worked each week. In a letter, they claimed without basis, that Plaintiff Ahmet was exempt from overtime.

42. Plaintiffs are owed a minimum wage, overtime premium and lost pay to which they are entitled under the FLSA and NYLL and have been damaged in an amount yet to be determined.

43. Defendants' violations of the FLSA and NYLL were done with knowledge of the law and with full understanding that this policy violated the law.

## AS A FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

44. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

45. Defendants willfully employed Plaintiffs in the afore-mentioned enterprise and failed to compensate Plaintiffs for all hours worked during their employment.

46. Upon information and belief, Defendants do more than $500,000.00 in business each year and handle goods which have moved in interstate commerce.

47. Defendants failed to pay the legally mandated minimum wage and overtime premium for all hours worked by Plaintiffs.

48. Defendants' failure to comply with the FLSA caused Plaintiffs to suffer loss of wages.

## AS A SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW (minimum wage and overtime)

49. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

50. Plaintiffs were employees of Defendants within the meaning of New York Wage Regulations (NYCRR Labor Section 138 et seq.; Article 6 & 9 of the NYLL; 12 NYCRR § 142-2.4).

51. Defendants failed to pay Plaintiffs the minimum wage and overtime premium for certain hours when Plaintiffs were required to be at work, ready to work, and actually performing the work.

52. Defendants' failure to comply with the New York Labor Law minimum wage and overtime protections caused Plaintiffs to suffer loss of wages and interest thereon.

53. This includes the failure to pay an additional hour of pay for every day wherein Plaintiffs were required to work in excess of ten (10) hours, known as "spread of hours" pay.

54. Defendants' violations were willful.

55. Defendants failed to pay minimum wage, overtime, and spread of hours pay as is required by the New York Labor Law.

56. Defendants failed to compensate Plaintiffs at the required minimum rate for superintendents pursuant to 12 NYCRR §§ 141 et seq.

57. On account of such violations, Defendants are liable to Plaintiffs for actual, statutory and liquidated damages.

### AS A THIRD CAUSE OF ACTION FOR
### VIOLATION OF NEW YORK LABOR LAW (wage notice and statement)

58. Plaintiffs repeat and reallege each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

59. At all times relevant to this action, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§ 190 et seq., including §§ 191, 193, 195, 198 and the applicable regulations thereunder.

60. At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiffs with the appropriate notice(s) required by NYLL 195(1) – Plaintiffs are therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-b).

61. At all times relevant herein, Defendants, individually and/or jointly, failed and willfully failed to provide Plaintiffs with the statement(s) required by NYLL 195(3) – Plaintiffs are therefore entitled to and seeks to recover in this action the maximum recovery for this violation, plus attorneys' fees and costs pursuant to NYLL 198 including NYLL 198(1-d)

## JURY DEMAND

62. Plaintiffs demand a trial by jury.

    **WHEREFORE**, Plaintiffs respectfully request a judgment against the Defendants:

A. Awarding all wages not paid as required under the FLSA and NYLL, plus any damages under the FLSA and the NYLL and interest;

B. Declaring that Defendants' policies and procedures violate the FLSA and the NYLL;

C. Awarding damages to the Plaintiffs to otherwise make them whole for any losses suffered as a result of such unlawful employment practices;

D. Awarding Plaintiffs punitive damages and liquidated damages;

E. Awarding Plaintiffs attorneys' fees, costs, and expenses incurred in the prosecution of the action; and,

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: Astoria, New York
November 22, 2022

**THE ROSE LAW GROUP, PLLC**

**/s/Jesse C. Rose**
Jesse C. Rose (JR-2409)
3272 Steinway Street; Suite 503
Astoria, New York 11103
JRose@theroselawgroup.com
PH: (718) 989-1864
Fax: (917) 831-4595